UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ) | | |
| FRANCESCA RECORDS and JOHN W. ) | | |
| GEILS, JR., ) | | |
| ) | | |
| Plaintiffs, ) | Civil Action No. | |
| ) | 12-11419-FDS | |
| v. ) | | |
| ) | | |
| GEILS UNLIMITED RESEARCH, LLC; ) | | |
| T&A RESEARCH & DEVELOPMENT ) | | |
| CORP.; GEILS REUNION; NICK ) | | |
| BEN-MEIR; SETH JUSTMAN; DANIEL ) | | |
| KLEIN; RICHARD SALWITZ; and PETER ) | | |
| BLANKFIELD, a/k/a PETER WOLF, ) | | |
| ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |

**MEMORANDUM AND ORDER ON PLAINTIFFS'**
**MOTION TO DISQUALIFY ATTORNEY BUTTERS**

**SAYLOR, J.**

This action arises out of a dispute over the rights to the name of a famous rock band. The J. Geils Band was formed in the late 1960s and rose to commercial success beginning in the 1970s. One of the band members, John W. Geils, Jr., has had a falling out with the other members of the band, and a dispute has arisen as to who owns the trademarks GEILS, J. GEILS, JAY GEILS, and J. GEILS BAND.

Both Geils and Francesca Records, his record label as a solo artist, contend that they own the trademarks. They have brought this action against the remaining members of the band, the band's manager, and various affiliated entities. Defendants are the four remaining members of the band (Seth Justman, Daniel Klein, Richard Salwitz, and Peter Blankfield, a/k/a Peter Wolf);

the band's manager (Nick Ben-Meir); T&A Research & Development Corporation (an entity created by the band in the 1970s); Geils Unlimited Research, LLC (an entity formed in 2012 for the purposes of a reunion tour); and Geils Reunion (a partnership through which the band organized performances in 1999 and 2009 through 2011).  Defendants contend that they own the trademarks pursuant to an agreement entered into in 1982.

Plaintiffs have moved for a Court order disqualifying attorney Thomas J. Butters and his law firm, Butters Brazilian LLP, from representing defendants in this matter.  As grounds for disqualification, plaintiffs contend that Butters has a conflict of interest due to competing obligations of loyalty, and that he will be a witness to some of the disputed events.

For the reasons set forth below, the motion will be denied.  It is well-settled that "[d]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Welch v. Paicos*, 26 F. Supp. 2d 244, 249 (D. Mass. 1998) (quoting *Adoption of Erica*, 426 Mass. 55, 58 (1997) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)).  It is possible that as the evidence in this case develops, and as the claims become more focused, it may be necessary to revisit the issue of disqualification.  However, particularly on the present record, the Court sees no reason to take the drastic step of disqualification of defense counsel.

I.      **Factual Background**

In its memorandum and order on the defendants' motion to dismiss, the Court summarized the facts underlying this dispute.  Only the facts relevant to this motion bear repetition here.

In 1966, plaintiff J. Geils formed a band with defendants Richard Salwitz and Danny Klein, which, by 1967, became known as the "J. Geils Blues Band" or the "J. Geils Band." In 1968, Stephen Bladd, along with defendants Seth Justman and Peter Wolf joined the band. The band's popularity grew, and in 1970 they signed a contract with Atlantic Records.

In 1973, Geils, Salwitz, Klein, Bladd, Justman, and Wolf formed a corporation called T&A Research and Development Corp. The corporation was organized under the law of Delaware, with each band member receiving an equal number of shares and equal voting rights. The purpose of the entity was to manage the J. Geils Band's royalties and revenues.

In 1982, Wolf and Justman hired attorney Abraham Somer to draft a document styled as a shareholder's agreement for T&A. On September 10, 1982, Geils, Salwitz, Klein, Bladd, Justman, and Wolf met with Somer in Boston to sign the agreement.

By 1983, tensions among the band members had increased significantly. That year, Wolf formally quit the J. Geils Band and sold back all of his shares in T&A. In 1984, Geils, Salwitz, Klein, Bladd and Justman chose not to continue performing together. T&A remained intact only as a clearinghouse for royalties from the fourteen albums that the J. Geils Band had recorded together.

In 1999, Geils, Salwitz, Klein, Bladd, Justman, and Wolf reunited for a J. Geils Band reunion tour. T&A managed the administration of the reunion tour and the distribution of revenues. The full band then reunited a number of other times for isolated shows in 2009 and 2010.

In 2003, Geils had obtained an ownership interest in Francesca Records, to which he granted (or attempted to grant) his rights, title, and ownership to the J. GEILS BAND trademark.

In June 2008, Francesca Records filed an application to register the J. GEILS BAND trademark in Class 25 (apparel) and Class 41 (entertainment); the application listed a date of first use in commerce of December 22, 1967, based upon the first use of the mark by Geils. The trademark was registered on December 8, 2009, and given registration number 3,720,699.

On April 13, 2012, T&A filed an application to register the trademark THE J. GEILS BAND, serial number 85597876, in International Classes 9 (musical recordings), 25 (clothing) and 41 (entertainment) and listed a first-use-in-commerce date of 1969.

Geils Unlimited Research, LLC is a limited liability company organized under the laws of Massachusetts. The members of Geils Unlimited are defendants Ben-Meir, Justman, Klein, Salwitz, and Wolf; they organized the company in order to continue performing as the J. Geils Band.

## II. Motion to Disqualify

Plaintiffs have moved to disqualify attorney Thomas Butters from representing defendants in this action.[1] Plaintiffs assert three grounds for disqualification.

First, Butters represents T&A Research & Development Corp., a corporation, as well as three current shareholders (Justman, Klein, Salwitz) and one former shareholder (Wolf) in claims adverse to the remaining shareholders (Geils and non-party Stephen Bladd). According to plaintiffs, as counsel to the corporation, Butters owes duties and has ethical responsibilities to the corporation and to all of its shareholders, and therefore cannot represent the corporation in a

---

[1] The motion seeks to disqualify both attorney Butters and his firm, Butters Brazilian LLP. For the sake of convenience, this memorandum will simply refer to the representation by attorney Butters.

claim brought by a shareholder.

Second, according to plaintiffs, Butters "actually assisted" Justman, Klein, Salwitz, and Wolf in "surreptitiously" forming Geils Unlimited LLC, which "has consistently claimed rights or interests in the assets and property of T&A," and has engaged in "attempted misappropriation" of the assets of T&A. The example given by plaintiffs is an effort by Geils Unlimited to cancel Francesca Records' federally registered "J. GEILS BAND" trademark.

Third, according to plaintiffs, Butters is "a necessary witness" in this action. In particular, Butters "will be required to testify" concerning "the conduct of the purported members of Geils Unlimited in attempting to divert or misappropriate property, revenues or assets from T&A (and, indirectly, from J. Geils and Bladd)" and "his representation of J. Geils, Justman and Salwitz in a prior federal court action."

### III.  Legal Standard

The Local Rules for the District of Massachusetts expressly adopt the ethical requirements and rules concerning the practice of law adopted by the Supreme Judicial Court of Massachusetts. *See* L.R. 83.6(4). Accordingly, the Massachusetts Rules of Professional Conduct control whether or not attorney Butters must be disqualified. There are two relevant rules: Rule 3.7 (governing situations where a lawyer may act as a witness) and Rule 1.7 (governing conflicts of interest).

### IV.  Analysis

#### A.  Timeliness

Defendants first contend that the motion to disqualify should be denied as untimely. Although courts in other circuits have held that late filing is an appropriate basis for denying a

motion for disqualification, the First Circuit has taken a more lenient approach in favor of avoiding unnecessary violations of ethical rules. *Compare Redd v. Shell Oil Co.*, 518 F.2d 311, 315 (10th Cir. 1975) (holding that "late filing fully justified the summary rejection of the [disqualification] motion") with *Fiandaca v. Cunningham*, 827 F.2d 825, 830 (1st Cir. 1987) (explaining that "in this circuit, arguments premised on delay have been less availing . . . . 'we cannot, in the face of a breach of professional duty, ignore the wrong because appellees' counsel neglected to discern the conflict earlier, or even opted to delay litigation by raising the motion.'") (internal citations omitted).

The First Circuit has held that "[a]bsent some evidence of true necessity, [the court] will not permit a meritorious disqualification motion to be denied in the interest of expediency unless it can be shown that the movant strategically sought disqualification in an effort to advance some improper purpose." *Fiandaca*, 827 F.2d at 830-831. Furthermore, the great majority of cases where motions to disqualify were denied as untimely involved motions filed on the eve of trial. *See, e.g., Redd*, 518 F.2d at 315 ("Why he postponed the filing until the Friday before the Monday on which the trial was to commence is inadequately explained. . . . It seems more likely that the motion was held in reserve until the most expedient time came along to file it."). Here, the litigation is still in its relative infancy. Accordingly, the Court will not deny the motion to disqualify attorney Butters and his firm as untimely.

### B.     **Disqualification Based on Alleged Conflicts of Interest**

The next question is whether attorney Butters should be disqualified from representing some or all of the defendants because of the existence of a conflict of interest.

Massachusetts Rule of Professional Conduct 1.7 governs the situation where an attorney

has a conflict of interest:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> > (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> >
> > (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> > (1) the lawyer reasonably believes the representation will not be adversely affected; and
> >
> > (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

According to plaintiffs, there are two ways in which the relationships between the parties create conflicts of interest that require disqualification: (1) the representation by Butters of a corporate defendant, T&A, of which plaintiff Geils and various individual defendants are shareholders, and (2) the concurrent representation by Butters of two co-defendants, T&A and Geils Unlimited, with potentially adverse interests.

### 1.     Representation of T&A and its Shareholders

The first potential conflict-of-interest issue arises out of the representation of Butters of a corporate defendant, T&A, and several of its shareholders, in a claim brought by Geils, another shareholder. Geils contends that by representing a corporation, Butters necessarily represents the interests of all its shareholders, including Geils (who has an adverse and conflicting interest), and that therefore Butters has an irreconcilable conflict.

The complaint asserts claims by Geils individually against T&A and the other shareholders of T&A for breach of fiduciary duties that they (the individuals) allegedly owed to Geils as a minority shareholder. All of Geils's claims are brought on his own behalf; none are brought derivatively on behalf of T&A.

Plaintiffs seem to suggest that an attorney can never represent a corporation in a claim brought by a shareholder of that corporation. But it is well-settled that "[a] lawyer retained by a corporation represents the corporate entity, not its shareholders, employees, or directors." *Rabb v. Tuthill*, 30 Mass. L. Rep. 358 (Mass. Super. Ct. 2012) (citing Mass. R. Prof. Conduct 1.13). Indeed, if plaintiffs' theory were correct—and counsel for a corporation necessarily must represent the interests of all the shareholders—it would lead to an absurd result: no corporation could ever retain counsel in a suit brought by a shareholder. That, obviously, cannot be the rule. *Accord Rabb*, 30 Mass. L. Rep. at 358 (holding that the corporation "is entitled to defend itself against Plaintiffs' claims that seek relief against the corporation, including the claims seeking to dissolve the corporation or in the alternative to void [its] bylaws).

There may be circumstances, particularly involving close corporations, where an attorney for a corporation might in fact be precluded from representing that corporation in a claim brought by a minority shareholder. T&A may be such a close corporation, and individual defendants Justman, Klein, Salwitz, and Blankfield together appear to represent a majority of shareholder interests.[2]

---

[2] Whether T&A would be considered a close corporation under Delaware law is not a foregone conclusion. Delaware law affords close corporation status "only to those corporations which (I) expressly elect to be treated as a close corporation and (ii) initially comply, and subsequently remain in compliance with, the statutory requirements for close corporation status set out in Section 342(a)." 2-43 DELAWARE CORPORATION LAW AND PRACTICE § 43.02 (citing DEL. CODE tit. 8, § 342). The statutory requirements set forth in § 342 outline specific provisions that must be included in the certificate of incorporation to obtain close-corporation status.

Some cases have suggested that counsel for a close corporation may under some circumstances owe a fiduciary duty to its shareholders, and that therefore counsel cannot represent the corporation in a position adverse to a shareholder.[3]  Whether and when counsel has such a fiduciary duty is a question of Delaware law, because T&A is a Delaware corporation.[4]

Delaware law on that subject is sparse at best, and appears to have arisen in the context of interpreting the attorney-client privilege.  *See, e.g., Metro. Bank & Trust Co. v. Dovenmuehle Mortg. Inc.*, 2001 Del. Ch. LEXIS 153, 6-7 (Del. Ch. 2001) (stating that "although confidential communications [between the partnership and its corporate counsel] are subject to the attorney-client privilege, the 'fiduciary duty' exception may allow a limited partner, under certain circumstances, to gain access to those otherwise privileged exceptions.  This exception, as applied in the corporate or partnership context, is generally traced back to *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), which set forth a framework under which shareholders and, as the doctrine has now been extended, limited partners can gain access to privileged communications of the corporation or the partnership."); *In re Fuqua Indus. S'holder Litig.*, 2002 Del. Ch. LEXIS 52 (Del. Ch. 2002) ("At the point in time when the interests of the

---

[3] Plaintiffs have not argued that Butters once represented Geils in his individual capacity, and is therefore in a position to use his confidences against him.

[4] Plaintiffs cite Massachusetts dicta suggesting that an attorney for a close corporation may have a personal fiduciary duty to each shareholder.  *See Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C.*, 405 Mass. 506, 513 (1989) (stating in dicta that "there is logic in the proposition that, even though counsel for a closely held corporation does not by virtue of that relationship alone have an attorney-client relationship with the individual shareholders, counsel nevertheless owes each shareholder a fiduciary duty. . . . Just as an attorney for a partnership owes a fiduciary duty to each partner, it is fairly arguable that an attorney for a close corporation owes a fiduciary duty to the individual shareholders.").  Massachusetts law does not, however, control in this circumstance in any event.   It is also noteworthy that a recent law review article cites *Schaeffer* for the proposition that "corporate counsel does not owe a duty of care to stockholders, directors, officers, employees, or other representatives of the corporation, even when the attorney represents closely-held corporations."  Edward S. Cheng, *An Attorney's Duty to Non-Clients*, 37 NEW ENG. L. REV. 55, 57 (2002).

fiduciary and the beneficiary diverge, however, there is no longer a mutuality of interest and a *Garner* analysis is not appropriate. Although there is little Delaware case law on the subject, and no bright-line rule that identifies the point in time when mutuality of interest diverges in each case, that divergence must necessarily occur at the point in time when the parties can reasonably anticipate litigation over a particular action.").

In any event, plaintiffs have cited to no authority holding that counsel here owes a fiduciary duty to the minority shareholders, or that such a duty would survive the filing of a claim against the corporation by a minority shareholder.[5] If there are facts in this case that might bear on the creation of such a duty, they have not been made part of the record. Under the circumstances, it does not appear that Butters owes a fiduciary duty to Geils, and, even if such a

---

[5] In *Bovee v. Gravel*, 174 Vt. 486 (2002), the Vermont Supreme Court addressed the issue of whether an attorney for a close corporation owes a separate duty of care to individual shareholders. The court surveyed opinions from a number of jurisdictions across the country and concluded as follows:

> Although a few courts have evinced a willingness to recognize an attorney's duty of care to the shareholders of a closely held corporation, these decisions are generally based on circumstances demonstrating a relationship between the attorney and a small number of shareholders approaching that of privity. *See, e.g.*, *United States v. Edwards*, 39 F. Supp. 2d 716, 731-32 (M.D. La. 1999) ("The issue of attorney-client relationship becomes more complicated in the case of a small closely held corporation with only a few shareholders or directors. In such cases, the line between individual and corporate representation can become blurred."); *Rosman v. Shapiro*, 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987) (counsel for closely-held corporation consisting of two fifty-percent shareholders represented both corporate entity and individual shareholders).
>
> Many courts, however, have refused to recognize a duty to nonclient shareholders even in such closely held corporations. *See Skarbrevik v. Cohen, England & Whitfield*, 231 Cal. App. 3d 692, 282 Cal.Rptr. 627, 634-36 (Ct. App. 1991) (counsel for close corporation owed no duty to nonclient shareholder); *Brennan v. Ruffner*, 640 So. 2d 143, 145-46 (Fla. Dist. Ct. App. 1994) ("where an attorney represents a closely held corporation, the attorney is not in privity with and therefore owes no separate duty of diligence and care to an individual shareholder"); *Felty v. Hartweg*, 169 Ill. App. 3d 406, 523 N.E.2d 555, 557, 119 Ill. Dec. 799 (Ill.App. Ct. 1988) (declining to recognize corporate attorney's duty to shareholders, court observed that "even in closely held corporations, minority shareholders often have conflicting interests with the corporation").

174 Vt. at 489.

duty once existed, it may have terminated when his interests become adverse to the corporation. Accordingly, the Court will not disqualify attorney Butters on that basis.

### 2. Representation of Geils Unlimited Research LLC

The next issue is whether attorney Butters can represent two entity defendants (Geils Unlimited Research LLC and T&A) with competing interests. Geils contends that Butters cannot represent both defendants simultaneously because they have adverse interests as to some of the claims. In particular, plaintiff Geils contends that some of his claims are based in part on allegations that defendants Wolf, Justman, Klein, and Salwitz formed Geils Unlimited for the purpose of directing assets away from T&A and its other shareholders (Geils and Bladd). Geils contends that Butters assisted the individual defendants in forming Geils Unlimited and acts as its registered agent. Therefore, he argues, Butters cannot adequately represent the interests of both T&A and Geils Unlimited, because they are directly adverse as to the claims of misappropriation.

However, the complaint includes no actual counts where T&A is the plaintiff and Geils Unlimited is the defendant (or in which Geils or any other individual brings a derivative action on behalf of T&A against Geils Unlimited). If there is a potential dispute between T&A and Geils Unlimited as to trademark rights (or royalties), it is not alleged in the complaint.[6] Furthermore, Butters does not appear to have been confronted with a situation where his clients must take conflicting positions in defense against plaintiffs' claims. It is conceivable that, as the claims in this case are narrowed and clarified through discovery, Geils Unlimited may need to

---

[6] Plaintiffs' motion for disqualification includes the new allegation that "conduct by Geils Unlimited, with the aid and assistance of Butters and Butters Brazilian, constitutes attempted misappropriation by Geils Unlimited of T&A's corporate assets, breach of fiduciary duties and other forms of malfeasance." (Mot. to Disqualify at 3). No such claims, however, appear in the complaint.

retain separate counsel in order to protect its interests.  That situation has yet to arise, or at least there is nothing in the record to suggest that it has.  Accordingly, because there is no present conflict of interest between T&A and Geils Unlimited with respect to their defenses to the claims in this case, the Court will not disqualify Butters on the basis of such a potential conflict of interest.

### C. Disqualification Based on Testimony as Witness

The final ground for disqualification advanced in plaintiffs' motion is that attorney Butters may be a necessary witness in this matter.

Massachusetts Rule of Professional Conduct 3.7 governs the situation where an attorney is a necessary witness:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

"The party moving for disqualification of a lawyer under Rule 3.7 has the burden of showing that the lawyer is likely to be a necessary witness by demonstrating that the lawyer's testimony is relevant to disputed, material questions of fact and that there is no other evidence available to provide those facts." *Carta v. Lumbermens Mut. Cas. Co.*, 419 F. Supp. 2d 23, 29 (D. Mass. 2006).  "Judges must carefully examine the evidence before them and should consider

whether the information sought from the attorney-witness can be presented in a different manner, whether the attorney-witness's testimony would be cumulative or marginally relevant, or whether disqualification was a foreseeable outcome." *Smaland Beach Ass'n v. Genova*, 461 Mass. 214, 221 (2012).

In any event, Rule 3.7 provides that a lawyer who is a necessary witness "shall not act as an advocate *at trial.*" (emphasis added). Therefore, it is not necessary to disqualify attorney Butters at this juncture. Indeed, plaintiffs they have yet to explain the testimony they intend to elicit from Butters. If plaintiffs in the future can meet their burden of showing that necessary testimony could not be acquired from another witness, it might then be appropriate to disqualify attorney Butters from serving as trial counsel. However, "that future possibility provides no basis for disqualifying [Butters] from continuing to represent [defendants] in pre-trial activities." *Rabb*, 30 Mass. L. Rep. 358, 12 (citing *Smaland Beach Ass'n,* 461 Mass. at 226–227).

Accordingly, the Court will not grant plaintiffs' motion for disqualification on the ground that attorney Butters may be a necessary witness.

### V.     Conclusion

For the foregoing reasons, plaintiffs' motion for disqualification is DENIED without prejudice to its renewal upon a showing of changed circumstances.

**So Ordered.**

Dated: July 30, 2013

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge